

**Bell Law Group, PLLC**

116 Jackson Avenue
Syosset, New York 11791
T (516) 280-3008
F (516) 706-4692
BellLG.com

December 16, 2024

<u>Via ECF</u>
Hon. Katherine Polk Failla
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007



Re:     <u>Virdi et al v. Copley Coffee Holdings, LLC et al</u>,
        **Docket No.: 1:24-cv-00478-KPF**

Dear Judge Failla:

Our office represents Plaintiffs Sukhjinder Virdi, Ravinder Singh, and Bilal Khan on behalf of themselves and all others similarly situated ("Plaintiffs"), in the above-referenced employment matter against their former employer, Copley Coffee Holdings, LLC and Copley DB 1 LLC (collectively, "Defendants" or "Copley Defendants").[1]

With the consent of defense counsel, Plaintiffs now respectfully seeks court approval of the parties' settlement agreement, which provides for a total payment of $175,000 to Plaintiffs (inclusive of attorneys' fees), in accordance with <u>Cheeks v. Freeport Pancake House, Inc</u>., 796 F.3d 199 (2d Cir. 2015). The parties' finalized settlement agreement is submitted herein as Exhibit A.

I.   **Procedural History**

Plaintiffs Sukhjinder Virdi ("Mr. Virdi") and Ravinder Singh ("Mr. Singh"), filed the complaint on January 1, 2024, alleging, inter alia: i) failure to pay accurate overtime wages in violation of the Federal Labor Standard Act ("FLSA") and the New York Labor Law ("NYLL"); ii) failure to provide Plaintiffs with accurate wage statements and wage notices in violation of the New York Wage Theft Protection Act ("NYWTPA"); and iii) spread of hours.

Soon after the initial complaint was filed, the Copley Defendants appeared in this action and their counsel advised the undersigned that since the Plaintiffs had signed binding Arbitration Agreements, this matter would have to be tried in the arbitral forum. The parties agreed to attempt to mediate this matter before litigating Defendants' motion to compel and/or moving to the arbitral forum. A mediation was scheduled for June 24, 2024.

---

[1] Plaintiffs named two additional defendants – East Side DD LLC and East Side DD 108 LLC – who upon information were Plaintiffs' employers before the Copley Defendants assumed ownership of the business in or around February 2019. These Defendants did not appear in this action.

Hon. Katherine Polk Failla
Virdi et al v. Copley Coffee Holdings, LLC et al.
December 16, 2024
Page 2 of 7

Prior to the scheduled mediation, a third Plaintiff, Bilal Khan ("Mr. Kahn"), sought to join the action, and he filed a "Consent to Join Class" form to preserve his claims. (Dkt. No. 22). A mediation session with Patrick Michael Mckenna, Esq. was held, in part, on June 24, 2024, but it was determined that additional disclosures between the parties was needed as to Mr. Khan, and the parties adjourned the mediation. The parties jointly reached out to the Court to explain the status and to seek a second extension of time to complete mediation, which this Court granted. (Dkt No. 24). Subsequently, Plaintiffs filed an amended complaint on July 9, 2024, wherein Mr. Khan was added as a Plaintiff and additional claims were asserted, including the reporting of fraudulent information to the IRS in violation of 26 U.S.C. § 7434 and spoilation. (Dkt. No. 25).

A second mediation was held on August 22, 2024, with Alfred G. Feliu, Esq. With Mr. Feliu's assistance, the parties reached a settlement in principle. Thereafter, the parties negotiated the terms of a full written agreement, which is now finalized and submitted here as Exhibit A.[2]

II.     **The Parties' Claims & Defenses**

Plaintiffs' claims: Defendants operate a number of Dunkin' Donuts franchises and hire employees to deliver fresh doughnuts to Dunkin' Donuts locations in New York City every night, seven (7) days per week. Plaintiffs alleged that Defendants created an unlawful policy since Defendants paid Plaintiffs for a flat thirty-five (35) hours per week, regardless of how many hours were actually worked, and therefore violated the minimum and overtime wage requirements of the FLSA and NYLL. Thus, Plaintiffs asserted that they are owed wages at the regular rate for all hours over thirty-five (35) in a workweek, and they are owed wages at the mandatory, statutory overtime rate for all hours over forty (40) in a workweek.

Plaintiffs asserted further that they worked more hours per week than what Defendants recorded in their payroll records. The discrepancy between hours *worked* versus hours *recorded* occurred because Plaintiffs' manager Taj sometimes asked them to clock in several hours after their arrival to work and, similarly, asked them to clock out before they finished their shifts.

Based on the foregoing, Plaintiffs' collective damages alleged in this case pre-discovery was $713,120.00, inclusive of attorney's fees. Stated alternatively, Plaintiffs' collective damages in this case pre-discovery was $683,120.00, exclusive of attorney's fees, which was estimated to be $30,000. (See Exhibit B, Damages Chart). The breakdown of damages is:

---

[2] The parties initially contemplated proceeding to arbitration for a review of the within settlement agreement, as under principles of contract law, the Parties' binding settlement agreements necessitated arbitration. However, in light of the Court's December 10, 2024 ruling, the within application is being submitted. The parties have no intention of running afoul of the Second Circuit's ruling in Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), and upon further reflection, realize it would have been better practice to have submitted the parties' settlement agreement to the Court in the first instance.

Hon. Katherine Polk Failla
Virdi et al v. Copley Coffee Holdings, LLC et al.
December 16, 2024
Page 3 of 7

- Plaintiff Virdi worked for Defendants from in or around 2018 through November 2023. Virdi alleged damages in the sum of $350,752.00.[3] (See Exhibit B, Damages Charts).

- Plaintiff Singh worked for Defendants from in or around 2010 through March 2022. Singh alleged damages in the sum of $204,000.00.[4] (Id.).

- Plaintiff Khan worked for Defendants from in or around August 2021 through May 25, 2024. Khan alleged damages in the sum of $158,368.00. (Id.).

Defendants' Position: Defendants maintained that Plaintiffs almost never worked more than thirty-five (35) hours per week; thus, they were typically paid *more* than what they were entitled to had they been paid on an hourly basis. Further, Defendants claimed that when Plaintiffs worked more than thirty-five hours per week, they were paid for the additional hours based on the applicable regular or overtime rate, apart from a few instances, as evidenced by Defendants' time sheets and payroll records. Lastly, Defendants insisted that their time and payroll records were accurate; thus, Plaintiffs' claims of overtime hours worked were largely fabricated or involved waiting time that was not compensable.

### III. Settlement Terms

The $175,000 settlement ("Settlement Sum") will be distributed as follows:

a) $129,185.00 will be distributed evenly to the three Plaintiffs, as follows:

- $43,061.66 to Plaintiff Sukhjinder Virdi.

- $43,061.66 to Plaintiff Ravinder Singh.

- $43,061.66 to Plaintiff Bilal Khan.

b) $45,815.00 to Bell Law Group, representing 25% of the Settlement Sum ($43,750.00), plus litigation costs in the sum of $2,065.00. (See Exhibit C, Billing).

### IV. The Settlement is Fair and Reasonable under the Cheeks Factors

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Kochilas v. Nat'l Merch. Servs., Inc., 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested

---

[3] As the Copley Defendants assumed ownership of the subject company in or about February 2019, they claimed to have no liability for any alleged violations that occurred prior to that date.

[4] See Footnote 3, Supra.

Hon. Katherine Polk Failla
Virdi et al v. Copley Coffee Holdings, LLC et al.
December 16, 2024
Page 4 of 7

issues, the settlement should be approved." Id. (citation omitted).

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The Wolinsky factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. Here, all of the factors support approving the parties' settlement. Id.

*First,* the total settlement amount of $175,000 is reasonable considering Plaintiffs' potential range of recovery at trial in light of the two (2) highly disputed issues in the case: i) the precise number of overtime hours Plaintiffs actually worked; and ii) whether Defendants' time records and payroll records were accurate.

If Plaintiffs were successful in proving that they worked all the overtime hours alleged in the Amended Complaint, and that Defendants' time records and/or payroll records were inaccurate, then they would be entitled to approximately $683,120.00 in owed wages under the FLSA and NYLL, inclusive of liquidated damages, and exclusive of attorney's fees. However, if Defendants were successful in asserting that their time records were accurate, and that Plaintiffs did not work the overtime hours that they claimed, then Plaintiffs' recovery would be considerably less. Indeed, Defendants continue to assert that Plaintiffs are entitled to little or no recovery whatsoever. Thus, a realistic range of recovery for Plaintiffs' FLSA claims was between zero and $683,120.00.

Under this proposed settlement, after deducting for attorneys' fees and costs, Plaintiffs will receive $129,185.00 collectively, which is ~19% of their maximum recovery of $683,120.00. (See Exhibit B, Damages Charts). The outcome here is reasonable under the FLSA, particularly in light of the legal and evidentiary challenges that would face the Plaintiffs in the absence of a settlement. See Zorn-Hill v. A2B Taxi LLC, Nos. 19-cv-1058, 18-cv-11165 (KMK), 2020 U.S. Dist. LEXIS 170608, 2020 WL 5578357, at *4-5 (S.D.N.Y. Sept. 17, 2020) (approving settlement amount equal to 12.5 percent of the plaintiffs' best-case scenario recovery in case involving "major factual and legal litigation risks"); Gervacio v. ARJ Laundry Servs. Inc., No. 17-cv-9632 (AJN), 2019 U.S. Dist. LEXIS 12760, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (approving settlement that would net the plaintiff approximately 13 percent of the maximum possible recovery amount (i.e., $4,000 to the plaintiff out of a possible $29,820.41) where facts were disputed); Aly v. Dr. Pepper Snapple Grp., Inc., No. 18 CV 4230 (FB)(LB), 2019 U.S. Dist. LEXIS 100256, at *6 (E.D.N.Y. June 13, 2019) (net settlement of 20% of FLSA plaintiff's maximum recovery is reasonable).

*Second*, this settlement agreement will enable the parties to avoid the anticipated burdens of continuing with protracted litigation. Through settlement, Plaintiffs will avoid the stress of contentious litigation and the loss of income associated with taking days off from work in order to attend depositions and trial. Plaintiffs will also avoid the stress, uncertainty, and delay that would be inherent in completing discovery and engaging in motion practice.

Hon. Katherine Polk Failla
Virdi et al v. Copley Coffee Holdings, LLC et al.
December 16, 2024
Page 5 of 7

*Third*, from Plaintiffs' perspective, the prompt payment of the settlement amount is far preferable to continued litigation. As noted above, there are significant legal and factual disputes in the case, particularly around the credibility of each party's position, and the number of hours Plaintiffs worked. In contrast through settlement, both parties have control over their recovery and financial exposure and avoid accruing additional attorneys' fees for an uncertain result. Plaintiffs are interested in a settlement that eliminates the uncertainty of trial, expedites his receipt of funds, and provides closure.

As to the fourth and fifth Cheeks factors, the settlement is clearly the result of arm's length negotiation by zealous advocates. Significantly, the parties were assisted in reaching the settlement by this court, by way of mediation on August 22, 2024, with Alfred G. Feliu, Esq., who proposed the settlement number of $175,000 to the parties as a "mediator's proposal" which was ultimately accepted by the parties. The assistance of an experienced neutral reinforces that a settlement agreement is non-collusive. See, e.g., Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process."). Thus, there was no fraud or collusion here.

## V.     The Non-Monetary Terms are Reasonable

The parties' settlement does not include the types of provisions discussed in Cheeks that contravene FLSA's remedial purposes. Snead v. Interim Healthcare of Rochester, Inc., 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018). The release is narrowly tailored to the claims in this litigation. (See Exhibit A, Settlement Agreement ¶ 5). Further, the parties' non-disparagement clause is also mutual and makes clear that truthful statements about the nature of the case, the settlement of the case, and the parties' experiences in litigating their claims and defenses, do not constitute disparagement. (Id. at ¶ 7). These provisions reflect compromises made among the parties and are within the guardrails of fairness set out in Cheeks.

## VI.    Plaintiffs' Attorneys' Fees are Reasonable

An award of attorneys' fees is also subject to review under Cheeks and must be reasonable. Rainboth-Venditti v. Nat'l Retail Sols, Inc., No. 6:16-CV-137 (ATB), 2018 U.S. Dist. LEXIS 19130, at *2 (N.D.N.Y. Feb. 6, 2018). The Second Circuit courts refer to the Goldberger factors when assessing the reasonableness of attorneys' fees: (1) the time and labor expended by counsel;(2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000). Here, all of the Goldberger factors demonstrate that Plaintiffs' attorneys' fees are reasonable.

*Goldberger Factors 1-3:* The legal and factual issues in this case were complex as they concerned the time and payroll records of three plaintiffs spanning six years. Indeed, to gain a command of the issues of the case, counsel for both parties spent considerable time speaking to their clients about the facts of the case and reviewing the time records and payroll records.

*Goldberger Factor 4:* The parties were represented by experienced attorneys who are well versed

in employment litigation. The undersigned has been practicing law since 2013, and her practice has predominantly focused on labor and employment law, including class and collective actions.

*Goldberger* Factors 5-6: Under the settlement agreement, Plaintiffs' counsel would receive a fee award of $45,815.00, representing 25% of the gross settlement sum (equaling $43,750), plus litigation costs in the sum of $2,065.00. (Exhibit C).

This amount is consistent with approved fee awards in this Circuit, thereby demonstrating its reasonableness. Indeed, here, Plaintiffs' counsel are seeking *less* than the thirty-three percent contingency fee arrangement that is typically deemed reasonable in a FLSA case. See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust, 925 F.3d 63, 71 (2d Cir. 2019) (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of Plaintiff and their attorneys more fully'"); see also Kornell v. Haverhill Ret. Sys., 790 Fed. App'x 296, 298 (2d Cir. 2019) (approving attorneys' fees award of one-third the gross settlement sum – not one-third the net settlement sum after deduction of attorneys' fees – and finding that trial court decision to grant same was permissible as long as "its award of attorneys' fees is reasonable."); Petersonv. Lab. Corp. of Am. Holdings, No. 1:20-cv-1056 (MAD/TWD), 2021 U.S. Dist. LEXIS 241010, at *8 (N.D.N.Y. Dec. 17, 2021) (holding 33 1/3% in attorney's fees are reasonable on Cheeks review); Li v. Ichiban Mei Rong Li, Inc., No. 1:16- CV-0863 (DEP), 2017 U.S. Dist. LEXIS 68060, at *4 (N.D.N.Y. May 4, 2017) (holding on Cheeks review that an attorneys' fee award equal to one-third of the total settlement amount minus costs is reasonable); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); Thornhill v. CVS Pharmacy, Inc., 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

The reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." See Fresno County Employees' Retirement Assoc., 925 F.3d at 72 (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007). Here, attorney and paralegal hours worked are summarized below:

| BLG Staff | Billable Amount | Sum of Hours |
|---|---:|---:|
| Admin | $4,388 | 35.1 |
| Associate (Mr. Grogan) | $2,720 | 6.8 |
| Partner (Ms. Gourarie) | $43,425 | 96.5 |
| **Grand Total** | **$50,533** | **138.4** |

Specifically, over the course of the litigation, two attorneys primarily worked on the case – one associate (Adam Grogan), who billed for approximately 6.8 hours, and one partner (Chaya Gourarie), who billed for approximately 96.5 hours in total. See Ex. C. The associate billed at the rate of $400.00 per hour and the partner billed at the rate of $450.00 per hour.

Hon. Katherine Polk Failla
Virdi et al v. Copley Coffee Holdings, LLC et al.
December 16, 2024
Page 7 of 7

      These hourly rates are deemed reasonable in this District. See, e.g., Campos, et al. v. BKUK 3 Corp., No. 18 Civ. 4036, 2021 U.S. Dist. LEXIS 151528, 2021 WL 3540243, at *11 (S.D.N.Y. Aug. 10, 2021) ("Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (collecting cases); See also Leon v. Gazivoda Realty Co., 2019 U.S. Dist. LEXIS 160059, at *6 (S.D.N.Y. Sep. 16, 2019) (approving the rate of $400.00 per hour for the undersigned [Chaya Gourarie] when she was a senior litigation associate in 2019). Most recently, on May 22, 2023, the court (Judge Koeltl) approved a settlement wherein the undersigned's hourly rate was $500.00, holding that, "[t]he Court finds the terms of the settlement including the attorney's fees and costs listed in this letter to be fair, reasonable, and adequate." See Alcantara Lopez et al v. TMS Management et al., No. 22-cv-10714-JGK (Docket No. 35).

      Additionally, several paralegals and administrative staff worked on this case, and billed for approximately 35 hours in total, at the rate of $125.00 per hour, which courts have deemed to be reasonable. See, e.g., Long v. HSBC USA Inc., 14 Civ. 6233, 2016 U.S. Dist. LEXIS 124199, 2016 WL 4764939, at *11 (S.D.N.Y. Sept. 13, 2016) ("As to the fees for paralegal work, in recent FLSA actions, hourly rates between $100 and $150 for paralegal work have been found to be reasonable.").

      In sum, based on the above time and hourly rates, Plaintiffs' counsel's lodestar is $50,533. (Exhibit C). Accordingly, Bell Law Group's attorneys' fees of $43,750.00 are within the range of attorneys' fees that courts in this Circuit have deemed reasonable. See, e.g., Johnson v. Brennan, No. 10 Civ 4712, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar."); Tosic v. Pinnacle Grp. N.Y. LLC, 2021 U.S. Dist. LEXIS 152137, at *5 (S.D.N.Y. Aug. 12, 2021) (awarding a lodestar multiplier of 3.30).

      For the reasons stated above, Plaintiffs respectfully request that the Court approve the settlement agreement in this case. We thank the Court for its attention to this matter.

                              Respectfully submitted,

                              /s/
                              Chaya M. Gourarie, Esq.

The Court has reviewed the settlement documents for fairness in accordance with the FLSA and Second Circuit law, *see, e.g.*, *Cheeks* v. *Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015), and has concluded that the terms are fair and reasonable. It should be noted, however, that the Court is not in this endorsement opining specifically on the reasonableness of the rates charged by the attorneys and paralegals representing Plaintiff.

Accordingly, the settlement is approved, and the Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Court will also so-order separately the stipulation of dismissal submitted by the parties.

Dated:     December 17, 2024         SO ORDERED.
           New York, New York

                                     HON. KATHERINE POLK FAILLA
                                     UNITED STATES DISTRICT JUDGE